O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENYSE A.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 5:19-cv-01586-KES<br><br>MEMORANDUM OPINION AND ORDER |

## I.

## PROCEDURAL BACKGROUND

In March 2016, Plaintiff Denyse A. ("Plaintiff") applied for Social Security Disability Insurance Benefits and Supplemental Security Income, alleging that she became disabled and unable to work at age 24 on June 5, 2014 (an onset date later amended to July 1, 2015, because of continuing work) due to a combination of physical and mental impairments. Administrative Record ("AR") 13, 36, 246, 277.

On October 30, 2018, the Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, testified along with a vocational expert ("VE"). AR 31-57. On December 12, 2018, the ALJ issued an unfavorable decision. AR 10-23. The ALJ found that Plaintiff suffered from the

medically determinable severe impairments of "rheumatoid arthritis; fibromyalgia; disc space narrowing at L5-S1; bilateral knee degenerative joint disease, status post left ACL repair; and obesity." AR 15. The ALJ determined that Plaintiff's bipolar disorder and anxiety disorder were not severe. AR 16. Despite her impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with occasional postural activities, frequent fingering and handling, and no exposure to certain environmental hazards. AR 17.

Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could not perform her past relevant work as a retail cashier or home healthcare caregiver. AR 21-22. The ALJ found, however, that Plaintiff could perform the alternative occupations of parking lot attendant (Dictionary of Occupational Titles ["DOT"] 915.473-010) and router (DOT 222.587-038). AR 23. The ALJ concluded that Plaintiff was not disabled. Id.

## II.
## ISSUES PRESENTED

<u>Issue One</u>: Whether the ALJ's RFC determination is supported by substantial evidence. (Dkt. 20, Joint Stipulation ["JS"] at 3-4.)

<u>Issue Two</u>: Whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony. (JS at 4, 15.)

## III.
## DISCUSSION

**A.    ISSUE ONE: Evidentiary Support for the ALJ's RFC Determination.**

**1.    Summary of the ALJ's Decision.**

The ALJ summarized Plaintiff's testimony and treating records. AR 18-21. Generally, those records show regular infusion treatments for arthritis, prescriptions for pain medication, multiple emergency room visits for nausea and vomiting, physical examinations with largely mild clinical observations accompanied by subjective complaints of pain, and multiple unremarkable x-rays.

(Id.)

The ALJ then addressed the medical opinion evidence, giving substantial weight to the opinions of both state agency medical consultants as consistent with the overall record. AR 20 (discussing opinions from K. Vu, D.O., and M. Sohn, M.D., at AR 59-67 and AR 79-91). In April 2016, Dr. Vu opined that Plaintiff could do light work, reasoning that "light RFC will accommodate for rt shoulder sprain/strain, neck strain, RA [rheumatoid arthritis], obesity." AR 63-64. Dr. Vu cited a record dated April 22, 2016, that "reveals she is able to lift up to 25 pounds." AR 63. Dr. Vu assessed no manipulative limitations. AR 65. On reconsideration in June 2016, Dr. Sohn agreed with Dr. Vu's assessment (writing "chronic pain, responding to opioid analgesics. above assessment is reasonable") but restricted Plaintiff to "frequent" handling and fingering. AR 88-89.

Plaintiff did not undergo a physical consultative examination, and Plaintiff's treating rheumatologist, Dr. Babak Zamiri, did not provide a medical source statement. The ALJ gave little or no weight to the other conclusory medical opinion evidence (AR 20), a decision that Plaintiff does not challenge on appeal.[1]

## 2. Analysis of Claimed Error.

### a. Light Work.

Plaintiff argues, "There is simply no way that an individual with [Plaintiff's]

---

[1] In December 2014, Plaintiff's primary care physician, Dr. Armando Franco, wrote generally worded letters that Plaintiff could present to a gym, landlord, and community college requesting to disenroll or receive accommodations. AR 534-37. For example, on December 22, 2014, he wrote that Plaintiff was having "difficulties walking and climbing stairs," such that she would benefit from relocating to a ground-level apartment. AR 537. In October 2014, however, Dr. Franco observed normal strength, tone, and range of motion in Plaintiff's lower extremities. AR 1146. In November 2014, he observed a "normal" gait. AR 1134. On December 5, 2014, he called Plaintiff's gait "normal" and noted that she was "increas[ing] her activit[y] and exercising." AR 1130-31.

medical record would be capable of" performing the standing, walking, and lifting requirements of light work. (JS at 9.) The state agency consultants, however, reviewed Plaintiff's medical records through June 2016 and opined that she could. AR 89. "State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R.§ 416.913a(b)(1). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Plaintiff does not discuss any medical opinion evidence that contradicts Dr. Vu's or Dr. Sohn's opinions. Plaintiff summarizes her treating history, but she does not explain how that treating history is inconsistent with Dr. Vu's or Dr. Sohn's opinions. Most of Plaintiff's treating records discuss subjective complaints, diagnoses, and treatment plans; they do not describe the degree of functional limitations attributable to her impairments. For example, Plaintiff cites numerous records documenting an elevated sedimentation rate and an elevated C reactive protein level. (JS at 5-9.) This is consistent with arthritis, but does not inform the degree of arthritic functional impairment. Plaintiff had elevated sedimentation as early as 2013 when she was still working. AR 1152. When Plaintiff's treating sources did assess her rheumatoid arthritis functional status, she was assessed as "Functional Class II," meaning she was capable of vocational activities.[2] AR 575-577.

Dr. Vu and Dr. Sohn based their functional opinions on a review of Plaintiff's medical records, and the ALJ cited many normal or mild clinical findings consistent with their opinions. The opinions of Dr. Vu and Dr. Sohn,

---

[2] There are four classes; Class II means "Able to perform usual self-care and vocational activities, but limited in avocational activities." See https://www.rheumatology.org.

4

therefore, constitute substantial evidence on which the ALJ could rely in assessing Plaintiff's RFC.

        b.     Fulltime Work.

Plaintiff challenges the ALJ's finding that she can persist in work activities for 8 hours/day over a 40-hour workweek. (JS at 4 [Plaintiff "has never been able to work at a full time occupation"].) Again, Dr. Vu and Dr. Sohn opined that she could, and their opinions constitute substantial evidence. Plaintiff's argument rests largely on her subjective symptom testimony (e.g., that she can only function about 2 hours/day (AR 42-43)), but the ALJ appropriately discounted her testimony, as discussed under Issue Two.

        c.     Symptom Control.

The ALJ discussed Plaintiff's success in controlling her symptoms with medication, as follows:

> A physical examination on September 4, 2015 was unremarkable except for some tenderness in the spine [(AR 433[3])]. Later that same month, the claimant told her doctor that her Remicade injections seemed to be helping, that she had been able to decrease her Fentanyl patch and was using over the counter Tylenol

---

[3] At that appointment with Dr. Franco, Plaintiff reported "crampy and shooting" upper and lower extremity pain. AR 432. She also reported, "Symptoms are relieved by opioid analgesics." Id. A physical examination of her upper and lower extremities found no abnormalities. AR 433. She started the 50 mcg/hr fentanyl patch after reporting that "the 25 mcg/hr patch was not working well enough to control her pain[.]" AR 434. At her next appointment on September 25, 2015, Dr. Franco wrote, "Remicade injections seem to help[.] Decreased fentanyl patch to 25[;] for breakthrough pain using OTC [over the counter] Tylenol[.]" AR 427. By October 2015, Plaintiff reported a current pain level of 4/10 but "last two weeks bad. Trying to push through pain to get exercise in." AR 424. In December 2015, Dr. Franco wrote again, "Symptoms are relieved by opioid analgesics." AR 418.

5

>for breakthrough pain [(AR 427)]. The impression was that the claimant was showing a good tolerance to treatment with good symptom control and with improvement.
>
>***
>
>On April 11, 2016, the claimant reported that her symptoms were overall better, but with severe episodes that were intermittent and relieved by opioid analgesics [(AR 392[4])]. By report, the claimant was maintaining good compliance with her treatment with good tolerance and good symptom control.

AR 19.

Plaintiff contends that her "symptoms have never been brought under control as suggested by" the ALJ. (JS at 9.) Plaintiff points out that in March 2016, her rheumatologist concluded that she was not responding to Remicade infusions. (JS at 7 (citing AR 366).) In this initial evaluation, Dr. Zamiri described Plaintiff's complaints and treatment, as follows:

>[Plaintiff] presents with rheumatoid arthritis and generalized pain. She says Remicade [has] helped a lot with pain but lately she has more pain which is getting worse. Despite increasing the dosage, she has more pain and swelling, she cannot make a fist and [is] dropping

---

[4] At this appointment, Plaintiff told Dr. Franco, "I am not on any Rheumatoid Arthritis medication. I had to go to the emergency room because I was in so much pain and they gave me 'Norco' and it's helping with my pain. I am no longer using the pain patch." AR 392. She reported an average pain of 6/10, with symptoms "overall better, but still with severe pain that is intermittent[.]" Id. He assessed, "good symptom control." Id. He observed her to have a normal gait and normal strength and tone in her lower extremities. AR 393. He prescribed Norco "as needed severe pain only[.]" AR 394. More than two years later at the October 2018 hearing, Plaintiff testified that she was still taking Norco for pain. AR 44.

6

things now. … Swollen joints include right hand.[5] … In the past she took Remicade (which was stopped since ineffective)…. Currently she is taking prednisone (tolerated well). … She is not responding to Remicade. I will apply for Simponi Aria. We will stop Remicade.

AR 365-66.

Thus, the record cited by Plaintiff indicates that Remicade initially "helped a lot with pain," but Plaintiff transitioned to other medications when Remicade became ineffective. This does not undercut the ALJ's reliance on Dr. Franco's records which repeatedly state in 2015 and 2016 that Plaintiff had good symptom control and her pain was controlled by opioid analgesics.

Plaintiff's later records are consistent with this. In February 2017, Plaintiff reported that she was not taking any medications at home. AR 697. In April 2017, she was prescribed Rituxan infusions and was referred to physical therapy. AR 585-86. In May 2017, her rheumatoid arthritis functional status was assessed as "Functional Class II." AR 581. In August 2017, she rated her pain as 4/10 and started a workout regimen. AR 579. Dr. Franco assessed her RA disease activity as "minimal." Id. In September 2017, Plaintiff reported "less joint pain." AR 545. In October 2017, she displayed some synovitis in her left wrist and right ankle, but she was still Functional Class II. AR 577, 655. In November 2017, she reported pain at 6/10, but her "symptoms improved after Rituximab infusion" and "[s]he is back working out every other day." AR 575.

In January 2018, she reported pain at 4/10. AR 571. In February 2018, she

---

[5] In February 2016, Dr. Franco's office observed right shoulder tenderness, but no swelling of Plaintiff's upper extremities. AR 1589. Two days before seeing Dr. Zamiri, Plaintiff told Dr. Franco's office, "Have not been on patch for pain for 2 weeks, since they upped my infusion[,] pain is more tolerable[;] still not ready to work[.]" AR 1586. A physical examination revealed spinal tenderness but no swelling. AR 1587. In April 2016, Plaintiff's upper extremities were normal. AR 1584.

was back to pain at 6-7/10, but she displayed "no synovitis; negative TP's [tender points] for FMS [fibromyalgia]; Good muscle strength, full ROM [range of motion] all extremities. No SC [subcutaneous] nodules or contractures. No deformities. MCP [metacarpophalangeal joints], PIPS [proximal interphalangeal joints], wrists tender and mild swelling. … [R]elief with Rituxan, last infusion 10/2017[.]" AR 569. She had a prescription for Tramadol "but has not needed to use it." AR 570. Her May 2018 appointment had the same findings, noting her last Rituxan infusion was in April 2018, and she had not needed Tramadol. AR 562-63.

Plaintiff has not demonstrated legal error invalidating the ALJ's finding that Plaintiff's medication regimen improved and controlled her pain symptoms over time.

          d.     Fingering and Handling.

Plaintiff argues that she "is not capable nor has she been capable at any time relevant herein of utilizing her hands and fingers on a frequent basis" due to arthritis. (JS at 10; AR 43-44.) In the social security context, "frequent" means 1/3 to 2/3 of the workday. SSR 83-10.

Regarding Plaintiff's hands, the ALJ cited (1) "December 2014 X-rays of the hands were normal and/or demonstrated no significant arthritis" and (2) May 2017 x-rays of the bilateral wrists and hands were "unremarkable." AR 19 (citing AR 982-83 (stating "no significant arthritis" and "no arthritis"), AR 1272-73). In September 2016, she had no visible joint deformity. AR 1646. In 2017, her rheumatoid arthritis functional status was Functional Class II. AR 575-76, 655. While 2018 records revealed wrist tenderness and mild swelling, there was no joint deformity. AR 562, 569.

After reviewing Plaintiff's medical records, Dr. Vu assessed no limits on fingering or handling, while Dr. Sohn limited Plaintiff to "frequent" fingering and handling. AR 65, 88-89. The ALJ concluded, "Based on the tenderness in her

8

hands and wrists with mild swelling but with the normal x-rays to her wrists and the lack of findings of nodules or contractures, frequent handling and fingering should not be unduly problematic." AR 21. Thus, the ALJ's translation of the medical evidence into an RFC for "frequent" fingering and handling is supported by substantial evidence.

## B. ISSUE TWO: Plaintiff's Subjective Symptom Testimony.

Plaintiff contends that she "has consistently and credibly stated throughout the relevant time period that while she can perform minimal basic activities of daily living for brief periods of time, she is not capable of persisting at those activities for more than a few minutes." (JS at 15.) She argues that the ALJ failed to give clear and convincing reasons for discounting her subjective symptom testimony. (Id.)

Plaintiff testified, "I could only stay about two hours doing something per day." AR 43. She could only pay attention for one hour. AR 302. After two hours doing something, she needed to lay down to rest. AR 47-48. She took a nap every day. AR 48. Plaintiff also testified, "I can't do writing or typing anymore …." AR 43. After writing "a few sentences," her "hand starts hurting and [her] writing become[s] illegible." AR 43-44. She could walk only for 15 minutes and had used crutches, a walker, a cane, and a brace/splint. AR 302-03; see also AR 46 (sometimes she needed a cane to walk). She could, however, drive, shop online, read novels, and regularly go to Starbucks. AR 300-01.

The ALJ gave at least three reasons for discounting Plaintiff's subjective symptom testimony: (1) lack of supporting objective evidence, (2) inconsistency with reported activities, and (3) Plaintiff's inconsistent statements about the efficacy of treatment. AR 20-21.

### 1. Reason One: Lack of Objective Evidence.

The ALJ wrote, "Her allegations as to her pain causing significant functional limitations in terms of standing, walking, lifting, using her hands, etc., are

9

inconsistent with the largely normal radiological studies …. The largely unremarkable physical examinations, such as the claimant showing no signs of synovitis, intact muscle strength, normal coordination and normal range in motion in her extremities or only mild swelling and tenderness in the wrists and hands, are similarly inconsistent with her allegations." AR 20-21.

As discussed above, x-rays of Plaintiff's hands and wrists were normal or showed no arthritis. AR 982-83, 1272-73. Far from needing a cane or walker to ambulate, the ALJ noted many physical examinations that assessed Plaintiff as having a normal gait. See, e.g., AR 485 (11/14); AR 447 (5/15); AR 433 (9/15); AR 1181 (10/15); AR 698 ("no obvious motor …deficits" in 2/17); AR 761 (negative for "gait disturbance" in 3/18). Thus, the record supports the ALJ's finding that some of Plaintiff's subjective symptom testimony lacked objective support. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

### 2. Reason Two: Inconsistency with Activities.

The ALJ noted that Plaintiff "has acknowledged engaging in activities which suggest she was not as limited as alleged. The record references, for example, the claimant's statements of going on a cruise (AR 1545[6]). …[D]espite her allegations of debilitating impairments, the claimant was advised to participate in regular aerobic exercise. (AR 1414[7])." AR 21. The ALJ also wrote, "In November 2017, she was exercising three days a week (AR 1522)." AR 20.

The Ninth Circuit has stated, "Even where [a claimant's] activities suggest

---

[6] In July 2017, Plaintiff told Dr. Franco's office that "since going on [a] recent cruise" she was evaluating what different foods triggered her gastrointestinal upset. AR 1545.

[7] In July 2016, Dr. Zamiri encouraged Plaintiff to "exercise regularly." AR 1414.

some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). Plaintiff does not address why the evidence discussed by the ALJ about her going on a cruise and exercising three days/week is not inconsistent with her testimony that she can only be active two hours/day and can only walk 15 minutes before resting. AR 43, 302. Plaintiff has failed to show legal error.

### 3. Reason Three: Plaintiff's Inconsistent Statements.

Finally, the ALJ wrote, "The claimant's assertions as to her pain are inconsistent with her reporting in the record, such as her treatment being helpful and her pain being managed with treatment (AR 392 [discussed above in note 4], 406-07 [discussed in note 5 as AR 1586], AR 427 [discussed in note 3]) and the impressions of her doctors that she was showing a good tolerance to treatment with improved and good symptom control (AR 427)." AR 21.

At the hearing, Plaintiff testified that her RA has "gotten worse in the last few years." AR 38. She testified that she had tried four different infusion therapies because "they don't work or I get a reaction from it." AR 39. The medical records summarized above do not show a worsening of symptoms, and Plaintiff reported that her infusion treatments initially helped then became ineffective. AR 365 (Remicade had helped); AR 575 (symptoms improved with infusion); AR 569 (relief with Rituxan). Thus, the ALJ gave clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony.

//
//
//
//

11

## IV.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner.

DATED:  June 19, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge